Mary Ellis BROWN, Respondent,

v.

Marion Larry BROWN, Appellant.

No. 48034.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 17, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 18, 1984.

Application to Transfer Denied
Nov. 20, 1984.

Kenneth J. Heinz, St. Louis, for appellant.

Greg Louis Roberts, Clayton, for respondent.

CRIST, Presiding Judge.

The trial court denied father's request, based on North Carolina law, to terminate his obligation to pay child support under a Missouri decree. Instead, the trial court granted mother's motion to increase the amount of support to $500.00 per child per month. We affirm.

On September 12, 1979, the Circuit Court of St. Louis County divided marital property, awarded child custody and provided for child support. The decree incorporated the terms of a property settlement and separation agreement reached between the parties. According to the agreement, father promised to pay to the Circuit Court Clerk $250.00 per child per month for support of

the two minor children, a daughter born on March 22, 1963, and a son, born March 17, 1965. The parties also agreed the Circuit Court of St. Louis County would retain jurisdiction to change or modify the provisions in the agreement respecting the care, custody, and support of the minor children.

In October of 1982, mother filed a motion seeking to modify the amount of child support. She alleged a substantial change in circumstances due to the eldest daughter being enrolled in college and increased expenses for her son, then a senior in high school. Mother further alleged father had enjoyed a substantial increase in salary from the time the child support decree was entered.

At the time mother filed her motion to increase support, she and the children were domiciled in St. Louis County. Father was a domiciliary of Maryland. In June of 1983, however, mother sold her home in Missouri and moved with the children to North Carolina, where she purchased a condominium. On July 12, 1983, father filed a motion to dismiss the attempted modification of child support. In his motion father claimed both children had ended their minority by operation of North Carolina law which sets the age of majority at 18 for all purposes. Compare various Missouri statutes collected in *Biermann v. Biermann,* 657 S.W.2d 65, 67, fn. 2 (Mo.App.1983).

Father contends he should benefit from application of North Carolina law in determining his obligation to provide child support. More particularly, he argues North Carolina's statutory age of emancipation terminates his obligation under a separation agreement incorporated in a Missouri decree. Mother, on appeal, contests father's claim she and the children became domiciled in North Carolina so as to permit application of its laws.

The evidence as to whether mother and children acquired a new domicile in North Carolina is unclear at best. Nevertheless, for purposes of this opinion only, we will assume they have adopted domicile there,

for it does not affect the outcome of our decision.

■ In a choice of law situation dealing with contracts, Missouri employs the criteria contained in § 188, The Restatement (Second) of Conflicts of Law (1971), to determine whether Missouri law or that of a sister state applies. *Nakao v. Nakao,* 602 S.W.2d 223, 226 (Mo.App.1980). The contacts to be weighed and evaluated are: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties.

■ The settlement agreement providing for child support was entered into in Missouri. From the record before us, the place of negotiation is uncertain. Apparently father resided in Florida at the time the agreement was reached. Father was to perform his obligation by making his child support payments to the Circuit Clerk of St. Louis County. Between 1979 and 1983, the clerk remitted these payments to Missouri residents. The agreement contemplated mother and children would remain Missouri residents for at least the time being because wife received the marital residence in St. Louis County. *Compare, Auten v. Auten,* 308 N.Y. 155, 124 N.E.2d 99 (1954).

The immediate subject matter of the agreement concerning child support, and to a certain extent the place of father's performance, is now located in North Carolina. Husband is domiciled in another jurisdiction, Maryland, and mother and children reside in North Carolina. The single truly significant contact Missouri possesses in the present case is in preserving the integrity of a Missouri decree in a Missouri court. See *Federbush v. Mark Twain Parkway Bank,* 575 S.W.2d 829 (Mo.App. 1978). *Federbush* "upholds the integrity of the Missouri judgment which imposed the support obligation according to Missou-

ri law upon parties subject to the jurisdiction of its courts." *Hartman v. Hartman*, 602 S.W.2d 932, 935 (Mo.App.1980). Missouri's jurisdiction over the parties in this case, its power to act, goes unquestioned as father entered his appearance before the trial court by counsel.

Undoubtedly North Carolina possesses a strong interest in protecting and providing for minors within its borders. Insofar as none of the parties reside in Missouri, we feel the law of North Carolina should he applied in this case. See *Phillips v. Englehart*, 437 S.W.2d 158, 160–61 (Mo.App. 1968).

Our inquiry does not end with that determination. Essentially this case deals with the construction of the separation agreement, namely what did the parties mean by providing for support to *minor* children. In deciding to apply North Carolina law to a child support dispute, we utilize not only its statutes but its case law as well. Had a North Carolina court been presented with the instant case, it would have applied Missouri law in construing the separation agreement. See *Cole v. Earon*, 26 N.C. App. 502, 216 S.E.2d 422 (1975). According to North Carolina law, the validity and construction of a contract, including separation agreements, is determined by the law of the state where it is executed. *Id.* at 423. See also, Annot., What Law Governs Validity, Effect, and Construction of Separation or Property Settlement Agreements, 18 A.L.R.2d 760 (1951). Furthermore, the substantive law of North Carolina expressly recognizes a parent can contract to assume child support obligations after the child's emancipation and past the age of majority. *Carpenter v. Carpenter*, 25 N.C.App. 235, 212 S.E.2d 911 (1975).

■ In using Missouri law to construe the separation agreement, it is clear the age of majority when used in connection with child support is 21. *Biermann*, 657 S.W.2d at 67–68. Obviously our conclusion would remain the same even if mother and children had not acquired a new domicile in North Carolina.

■ In his second point, father contests the sufficiency of the evidence presented as to a change in circumstances warranting an increase in child support. He also claims error in making the award retroactive to the date mother filed her motion for the increase. Section 452.370, RSMo 1978 permits modification of a dissolution decree as to child support installments accruing after a motion to modify is made. No jurisprudential value would be served in discussing the evidence supporting the trial court's order increasing support obligations. See Rule 84.16(b).

Judgment affirmed.

PUDLOWSKI and SIMON, JJ., concur.