Paula BONNER, et al., Plaintiffs–
Appellants,

v.

**AUTOMOBILE CLUB INTER–
INSURANCE EXCHANGE,**
Defendant–Respondent.

No. 65586.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 13, 1995.

Christopher J. Quinn, Ray B. Marglous, P.C., St. Louis, for plaintiffs-appellants.

F. Douglas O'Leary, Moser and Marsalek, P.C., St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

Plaintiffs-appellants Paula and Elbert Bonner appeal from a grant of defendant-respondent's motion for summary judgment by the Circuit Court of the City of St. Louis. We transferred this cause after opinion to the Supreme Court because of the importance of the question involved and the general interest in a consistent resolution of the insurance question of coverage. Upon retransfer from the Supreme Court we again affirm. *See State Farm Mutual Insurance Co. v. Sylvia Lee Ballmer and Wilbur Ballmer,* 899 S.W.2d 523, (Mo. banc 1995). We affirm.

In reviewing the grant of a motion for summary judgment, we first determine whether there is any genuine issue of material fact as construed most favorably to the party against whom summary judgment was entered. If there is no genuine issue of material fact, we, then, determine whether the prevailing party was entitled to a judgment as a matter of law.

From the briefs of the parties, it is apparent that there is no genuine issue of material fact. However, we will review the facts in order to address the salient points of law.

This action arises out of a one-car accident in Guadalupe County, New Mexico on November 8, 1989. Marla Bonner was driving a vehicle which was covered by an insurance policy in the name of Elbert Bonner. The policy was issued by the respondent, Automobile Club Inter–Insurance Exchange (Automobile Club). The policy's liability coverage limits were fifty thousand dollars per person and one-hundred thousand dollars per occurrence. The accident left Elbert[1] severely injured and rendered his wife, Paula, a quadriplegic.

The Missouri Personal Auto Policy issued to Elbert became effective on August 8, 1989. The policy contained a provision which obligated Automobile Club to settle or defend any claim or suit seeking damages for bodily injury from any covered person using Elbert's vehicle. The policy also contained a "household exclusion" clause which read as follows:

EXCLUSIONS

---

1. For clarity, we will refer to the parties by their first names. No disrespect is intended.

A. We do not provide liability coverage for any person:

.    .    .    .    .

11. For bodily injury to you or any person residing in your household.

Through a letter, counsel for Elbert and Paula first notified Automobile Club of a claim against Marla on December 28, 1989. On January 10, 1990, Automobile Club responded that the "household exclusion" clause contained in the insurance policy precluded coverage for Elbert or Paula.

On June 21, 1990, counsel for Paula and Elbert, via letter, sought settlement of the claim against Marla in light of the decision by the Missouri Supreme Court, *American Family Mutual Ins. Co. v. Ward*, 789 S.W.2d 791 (Mo. banc. 1990), decided the preceding month. Automobile Club maintained its position that it owed no liability coverage to Marla. Automobile Club based its position on its own interpretation of the insurance policy and on case law.

On July 8, 1991, Paula and Elbert filed suit against Marla seeking damages for bodily injury caused by Marla's negligent operation of Elbert's vehicle. The suit was filed in Guadalupe County, New Mexico, the situs of the 1989 accident in which Paula and Elbert were injured. Two weeks later, Paula and Elbert's counsel sent Automobile Club a copy of the complaint and demanded that Automobile Club provide a defense to Marla. On July 29, 1991, Automobile Club again denied that it had any responsibility and refused to take any action.

After completing service on Marla, Paula and Elbert's attorney sent Automobile Club a copy of the summons and again demanded that Automobile Club provide a defense to Marla. Automobile Club's response was to return the letter with the following message written at the bottom: "Please see my letter of 7–29–91."

In August, 1991, Paula and Elbert's counsel contacted the insurance adjuster by telephone. He again asked Automobile Club to defend Marla or at a minimum seek a declaration of rights under the policy. Again, Automobile Club denied any duty and declined to take any action.

On October 23, 1991, the New Mexico Court granted Paula and Elbert's Motion for Default Judgment against Marla.

On January 28, 1992, the Supreme Court of Missouri handed down *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479 (Mo. banc 1992) which held that the Motor Vehicle Financial Responsibility Law effective July 1, 1987, partially invalidated a "household exclusion" clause virtually identical to the one in Elbert's policy. Three weeks after the case was handed down, an Automobile Club adjuster contacted Paula and Elbert's counsel and informed him that she was seeking authority to settle Paula and Elbert's claim for twenty-five thousand dollars.

On February 25, 1992, the New Mexico Court assessed Paula's damages at $1,800,-000 and Elbert's at $250,000. The order stated that Marla was to be responsible for all damages. On March 17, 1992, Auto Club tendered a settlement draft in the amount of twenty-five thousand dollars payable to Elbert and Paula. The draft stated that it was in payment of "Any and all claims against Marla Bonner arising out of an accident of 11/8/89." Paula and Elbert declined the settlement offer at that time.

Marla subsequently assigned to Paula and Elbert her claims against Automobile Club for bad faith refusal to settle and defend. In the Circuit Court for the City of St. Louis, Paula and Elbert then filed the suit against Automobile Club which is the subject of this appeal.

On February 1, 1994, the Honorable Thomas C. Mummert, III, relying on *State Farm Fire & Cas. Co. v. Metcalf, by Wade*, 861 S.W.2d 751, (Mo.App.S.D.1993), found Automobile Club owed no duty to Marla and granted its Motion for Summary Judgment. On March 25, 1994, the trial court denied Paula and Elbert's motion for reconsideration. This appeal follows.

■ In the pleadings below, there are allegations of both bad faith refusal to settle and refusal to defend. In *Ganaway v. Shelter Mutual Ins. Co.*, 795 S.W.2d 554 (Mo.App. S.D.1990), our colleagues in the Southern

District stated that "an insurer's duty to defend is distinct and different from its duty to settle a claim against its insured within the policy limits when it has a chance to do so. It is also clear that a 'bad faith' action for refusal to settle sounds in tort, not in contract...." 795 S.W.2d at 556. The duty to defend on the other hand is contractual. *Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co. of North Carolina,* 716 S.W.2d 348, 357 (Mo.App.1986).

In *Metcalf, supra,* the Court of Appeals for the Southern District set out the elements required to recover for the bad faith refusal of an insurance company to settle a claim within policy limits.

> The elements of the tort appear to be that: (1) the liability insurer has assumed control over negotiation, settlement, and legal proceedings brought against the insured; (2) the insured has demanded that the insurer settle the claim brought against the insured; (3) the insurer refuses to settle the claim within the liability limits of the policy; and (4) in so refusing, the insurer acts in bad faith, rather than negligently.

*Metcalf,* 861 S.W.2d at 756 (citing *Dyer v. General American Life Ins. Co.,* 541 S.W.2d 702 (Mo.App.1976)).

■ These elements were not satisfied in this case. The insured never demanded that the insurer settle the case within the policy limits. Essentially, Paula and Elbert take the position that Marla was a covered person under the policy owned by Elbert. For the purposes of this analysis, Marla was the person who had to make demand to settle because the claims were against her as the driver. Marla never made demand upon Automobile Club to settle the case. All correspondence in the legal file is between Paula and Elbert's personal injury attorney and the insurance company. The record does not contain one instance in which Marla, the covered person, demands settlement of the claims against her.

■ Even if Marla is not the one required to make demand upon the insurance company, any demand made by Elbert to settle the case was insufficient. Elbert occupies two separate and distinct roles in this case; he is both the insured and the personal injury plaintiff. All of the demands to settle the case were in his role as personal injury plaintiff. In all correspondence, counsel for Elbert and Paula made it clear that he represented both of them, as plaintiffs, not Elbert, the insured.

■ Moreover, the demands made by Paula and Elbert's counsel, as personal injury attorney were insufficient in their own right. The settlement demand portions of two letters written by Paula and Elbert's counsel to Automobile Club read as follows:

> It would be appreciated if you or one of the representatives would contact me so that an amicable settlement may be made. December 28, 1989

> We are making demand for payment on behalf of my client, Paula Bonner, age 22, a paraplegic, for the following reasons:

> 1. That the responsible party is not a member of Paula's household (sister-in-law), therefore, provision Number 11, on page 8, of Elbert Bonner's policy does not apply;

> 2. The case of *American Family Mutual Insurance Company v. Ward* mandates post 1987 household exclusions to be invalid and against public policy. June 21, 1990

These demands for settlement from Paula and Elbert's attorney do not rise to the level of demanding settlement within the policy limits. They are overly vague as to what settlement is sought. In fact, neither one contains any information from which an amount of settlement can be gleaned. Furthermore, counsel for Paula and Elbert, at oral argument, admitted that no demand was ever made.

■ In the present action, Paula and Elbert stand in the shoes of Marla. We will not allow a claim for bad faith to stand when there was no demand made to settle, either within or outside of the policy limits. This is an essential element of the tort. Therefore, with respect to the claim for bad faith refusal to settle, we hold that the trial court did not commit error in granting summary judgment in favor of Automobile Club.

■ We turn now to the duty to defend. Before we can address Automobile Club's duty to defend, we must determine what state law governs this issue. The criteria for determining which state law governs contractual disputes was recently set out by the Missouri Court of Appeals for the Western District:

> Missouri uses the criteria contained in Sec. 188, The Restatement (Second) of Conflicts of Law (1971), in choice of law situations dealing with contracts. *Brown v. Brown,* 678 S.W.2d 831, 833 (Mo.App.1984). The contacts to be weighed and evaluated are: (1) the place of the contract; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the conflict; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.*

*Frost v. Liberty Mut. Ins. Co.,* 828 S.W.2d 915, 920 (Mo.App.W.D.1992). The law which should govern the duty to defend issue is Missouri law. The policy was executed in Missouri. Paula and Elbert reside and Automobile Club conducts business in Missouri. Although the underlying lawsuit was filed in New Mexico, all correspondence between the parties occurred within Missouri. Marla assigned her claim against Automobile Club in Missouri. Furthermore, this lawsuit was filed in Missouri. Therefore, Missouri law governs the duty to defend issue.

Under Missouri law, an insurer's duty to defend is broader than the duty to indemnify. The duty of a liability insurer to defend is determined by comparing the policy language and the allegations of the petition in an action brought by a person injured. If the complaint alleges facts which state a claim potentially or arguably within policy coverage, there is a duty to defend. *Luyties Pharmacal Co. v. Frederic Co.,* 716 S.W.2d 831, 834–835 (Mo.App.E.D.1986); *Missouri Terrazzo Co. v. Iowa Nat. Mut. Ins. Co.,* 740 F.2d 647, 652 (8th Cir.1984).

■ Paula and Elbert assert that the Missouri Supreme Court's decision in *Halpin v. American Family Mut. Ins. Co., supra,* invalidated the household exclusion in Elbert's policy. Therefore, they argue that because the household exclusion was invalidated by *Halpin,* Automobile Club owed Marla a duty to defend her in the New Mexico lawsuit.

We find this argument unpersuasive. The trial court correctly applied the law when, relying on *Metcalf, supra,* it held that Automobile Club had no further obligation.

■ In *Metcalf,* the Southern District addressed this point precisely. We adopt the rationale of that decision. The public policy exception to the general principle of freedom to contract in insurance policies is limited by the statute in which the exception is based, § 303.190.2 RSMo 1986. The statute is designed to protect injured people who are hurt by negligent drivers. The contractual obligation to defend is a protection provided to the insured, not the injured person. Because the benefit of this provision inures to the insured and not the innocent, injured person, it does not violate public policy to allow the parties to contractually limit this duty. *Metcalf,* 861 S.W.2d at 754–755.

The exclusion contained in Elbert's policy clearly states that no liability coverage will be given ... "[f]or bodily injury to you or any person residing in your household." Elbert and Paula were both attempting to sue Marla under Elbert's policy for their injuries. The policy specifically excluded liability coverage in this situation. Therefore, we hold that Automobile Club owed Marla Bonner no duty to defend. The decision of the trial court is affirmed.

SMITH, P.J., and WHITE, J., concur.