**Lee DILLARD, et al., Plaintiff,**

v.

**SHAUGHNESSY, FICKEL AND SCOTT ARCHITECTS, INC., Defendant,**

**A.L. Huber & Son Inc., Appellant,**

**P&S Masonry, Inc., Respondent.**

**No. WD 52665.**

Missouri Court of Appeals,
Western District.

Feb. 25, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 1, 1997.

Application to Transfer Denied
May 27, 1997.

---

**2.** Chapter 36 is the State Personnel Law (Merit System).

**3.** Chapter 43 establishes the State Highway Patrol.

Mark E. Johnson, Lora R. Schultz, Morrison & Hecker L.L.P., Kansas City, for appellant.

Jerome V. Bales, Arlen L. Tanner, Wallace, Saunders, Austin, Brown And Enochs, Chartered, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SPINDEN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Appellant A.L. Huber & Son, Inc., a general contractor on a construction project, appeals the trial court's ruling on motion for summary judgment that the indemnity provision of its subcontract with P&S Masonry, Inc. did not entitle it to indemnity for the

attorney's fees it expended in defending a lawsuit brought against it by a worker injured on the construction project.

We affirm the trial court's determination that Kansas law governs the interpretation of this subcontract and that under Kansas law Huber's own attorney's fees were not included in the provision requiring P&S to indemnify Huber for "any liability, loss, cost or expenses ... caused by either the General Contractor or the Sub–Contractor or by their work."

We find, however, that the subcontract's indemnity provision was broad enough to require P&S to indemnify Huber for the moneys Huber had paid to the project's architect and engineer in settlement of their claims that the indemnity provision of Huber's contract with the landowner explicitly required Huber to reimburse them for the attorney's fees and expenses they incurred in defending the same personal injury suit. These sums constituted a liability of Huber to the architect and engineer, and hence came within the indemnity provision of the subcontract. Similarly, the subcontract required P&S to reimburse Huber for the moneys it was required to pay the landowner to reimburse it for the attorney's fees it incurred in defending the personal injury claims against the landowner. Reversed and remanded for further proceedings in accordance with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Most Reverend Ignatius J. Strecker, Archbishop of the Roman Catholic Archdiocese of Kansas City, Kansas, hired A.L. Huber & Son, Inc. as general contractor for the ·construction of a church and a school in Leawood, Kansas. He also hired Shaughnessy, Fickel & Scott Architects, Inc. ("SFS") to serve as architect for the construction project, and hired Structural Engineering Associates, Inc. ("SEA") to serve as structural engineer for the project. The contract between Huber and the Archbishop contained a provision requiring Huber to indemnify the Archdiocese, SFS, and SEA for any claims and expenses, including attorney's fees, caused in whole or in part by the negligence of Huber or its subcontractors.

Huber requested and received bids from several subcontractors, including P&S Masonry, Inc. It is unclear when Huber accepted P&S's bid, but P&S began work on January 24, 1991. On January 28, 1991, Huber mailed P&S two subcontracts, one for masonry work on the church and one for masonry work on the school. On March 1, 1991, John Pinnell, president of P&S, signed the subcontracts on behalf of P&S in its office in Lenexa, Kansas. Mr. Pinnell then mailed the subcontracts back to Huber along with an attached list of exclusions and clarifications. Randy K. Huber, Vice–President of Huber, signed the subcontracts on behalf of Huber on March 4, 1991, in Huber's office in Kansas City, Missouri.

The subcontract signed by Huber and P&S contained an indemnity provision which stated in part that:

> The Sub–Contractor will save the General Contractor harmless from *any liability, loss, cost or expenses, resulting from injuries or damages to persons or property caused by either the General Contractor or the Sub–Contractor or by their work.*

(emphasis added). This indemnification provision was contained in small gray print as part of a "boilerplate" series of pre-printed provisions on the back of the contract form.

On March 20, 1991, Lee Dillard, an employee of P&S, was injured when a masonry wall on the construction site collapsed. Mr. Dillard subsequently filed suit against the Archbishop, SFS, SEA, Huber, and two other corporations he alleged were responsible for the placement and maintenance of scaffolding involved in the fall. Archbishop Strecker demanded that Huber provide him with a defense pursuant to the indemnity provision of his contract with Huber. Huber's insurer provided a defense to the Archbishop, and Mr. Dillard subsequently dismissed his claim against the Archbishop.

On May 19, 1992, Huber's attorney sent a letter to P&S stating that Mr. Dillard's injury was attributable to P&S's work, and that P&S had "a contractual obligation to A.L. Huber with respect to plaintiffs' claims in the

Dillard lawsuit as well as any related claims that may be made against A.L. Huber by the codefendants in that lawsuit or by others." Huber demanded that P&S or its insurer defend and indemnify Huber against Mr. Dillard's suit and all future claims.

SFS and SEA were granted summary judgment on all of Mr. Dillard's claims against them. They then filed cross-claims against Huber seeking indemnification for their expenses and attorney's fees incurred in defending Mr. Dillard's claims. The circuit court found they were not entitled to indemnity. On appeal, this Court reversed and remanded. We noted that, in addition to suing SFS and SEA, Mr. Dillard had claimed that his injuries were caused in whole or in part by Huber and P&S. If this were proved, it would trigger the indemnity provision of the contract between Huber and the Archbishop, which specifically required:

> the General Contractor to indemnify Architects and Architects' consultant (Engineers) from claims and expenses, including attorney fees attributable to injury caused in whole or in part by the negligence of the General Contractor [Huber] or its subcontractors.

*Dillard v. Shaughnessy, Fickel and Scott Architects, Inc.*, 884 S.W.2d 722, 723 (Mo. App.1994) (emphasis added).

On remand, Huber settled SFS and SEA's indemnity claims against it by paying them $34,210.11 and $43,084.49, respectively. He then filed a third-party petition against P&S, Count II of which sought indemnity from P&S for the moneys Huber had paid in settlement of SFS and SEA's claims against Huber for indemnity. Count I sought indemnity from P&S for the attorney's fees and expenses Huber itself incurred in defending against Mr. Dillard's suit. Count III sought indemnity for the attorney's fees and other expenses it had paid in defending Mr. Dillard's claims against Archbishop Strecker.

P&S and Huber filed cross-motions for summary judgment. Both motions were based on the language of the indemnity provision of their subcontract, which, as earlier noted, required P&S to indemnify Huber for "any liability, loss, cost or expenses" resulting to Huber from injuries to persons such as

Mr. Dillard which arose in whole or in part out of Huber's or P&S's negligence.

The trial court ruled that the phrase "any liability, loss, cost or expenses" as used in the indemnity provision of the subcontract did not include Huber's attorney's fees incurred in defending Mr. Dillard's claims against Huber itself because it did not use the words "attorney's fees." For this same reason, the court found that Huber was not entitled to indemnity from P&S for the amounts it had paid to the Archbishop, SFS, and SEA, because those amounts consisted largely of reimbursement for the attorney's fees and expenses those parties had incurred in defense of Mr. Dillard's claims against them and the language of the contract did not clearly show an intent to indemnify Huber for the liability it contractually incurred for these other parties. Huber has appealed these determinations.

The trial court also found that, under the indemnity provision of the Huber–P&S subcontract, Huber *was* entitled to indemnity from P&S for its costs and expenses other than attorney's fees incurred in defending Mr. Dillard's claims against it. P&S has not appealed that determination.

## II. STANDARD OF REVIEW

"The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law." *Bonds v. Missouri Dep't of Mental Health*, 887 S.W.2d 418, 421 (Mo.App.1994). We review the grant of summary judgment by looking to the entire record to determine whether there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Dial v. Lathrop R–II Sch. Dist.*, 871 S.W.2d 444, 446 (Mo. banc 1994). We view the record in the light most favorable to the party against whom summary judgment was entered, and will affirm if the judgment is sustainable as a matter of law under any legal theory. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Denial of summary judgment is not appealable. *Gilmore v. Erb*, 900 S.W.2d

669, 671 (Mo.App.1995); *Hammer v. Waterhouse*, 895 S.W.2d 95, 99 (Mo.App.1995).

## III. CHOICE OF LAW

Before we can decide whether Huber is entitled to indemnity for the attorney's fees it, the Archbishop, SFS, and SEA expended in defense of Mr. Dillard's claims, we must determine whether this issue is governed by Missouri law (as Huber argues) or by Kansas law (as respondents argue).

### A. "Most Significant Relationship" Analysis.

When determining choice of law issues, Missouri courts apply the "most significant relationship" test set out in Section 188 of the Restatement (Second) of Conflict of Laws. *CIT Group/Equip. Fin., Inc. v. Integrated Fin. Serv., Inc.*, 910 S.W.2d 722, 728 (Mo.App.1995); *Brown v. Brown*, 678 S.W.2d 831, 833 (Mo.App.1984). That section states:

> § 188. Law Governing in Absence of Effective Choice by the Parties
>
> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place of contracting,
> >
> > (b) the place of negotiation of the contract,
> >
> > (c) the place of performance,
> >
> > (d) the location of the subject matter of the contract, and
> >
> > (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 188 (1971).

As is evident, Section 188(1) states that if the parties have made an effective choice of law, then the court should apply that law. If no effective choice of law has been made, then Section 188(2) identifies five potentially significant contacts that a court may weigh in a contract case in determining which state has the "most significant relationship." Missouri courts do not apply these factors by simply counting how many factors favor a particular state, however. Instead, we evaluate the contacts based on their relative importance to the particular issue before the court. Different factors may be entitled to more weight in regard to one issue than in regard to another. *Id.; Hartzler v. American Family Mut. Ins. Co.*, 881 S.W.2d 653, 656 (Mo.App.1994); *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.*, 716 S.W.2d 348, 358 (Mo.App.1986).

The parties in this case have limited their arguments to a discussion of whether these five factors favor the application of Missouri or Kansas law. As subsection (1) of Section 188 itself admonishes, however, the five factors set out in Subsection 188(2) are not to be considered in a vacuum. Rather, they are contacts to be considered "in determining the choice of law under the principles of § 6" of the Restatement (Second) of Conflict of Laws. *D.L.C. v. Walsh*, 908 S.W.2d 791, 795 (Mo.App.1995) (quoting *Griggs v. Riley*, 489 S.W.2d 469, 473 (Mo.App.1972)).

Thus, in weighing and interpreting the five factors set out in Section 188(2) we must be guided by the principles set out in Section 6. The latter section sets out seven guiding principles as follows:

> § 6. Choice-of-law Principles
>
> . . . .
>
> (2) When there is no such [statutory] directive, the factors relevant to the choice of the applicable rule of law include
>
> > (a) the needs of the interstate and international systems,
> >
> > (b) the relevant policies of the forum,
> >
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2).

B.  Partial Choice of Law by Parties.

Both parties agree that the subcontract does not contain an effective choice of law provision governing the indemnity provision in question. We note, however, that the subcontract does contain a provision incorporating certain parts of the general contract between Huber and the Archbishop,[1] and the general contract *does* contain a choice of law provision stating that the general contract will be governed by Kansas law. As a result, those portions of the subcontract which consist of provisions incorporated by reference from the general contract would be interpreted under Kansas law should they be the subject of litigation.

Neither the Restatement nor prior Missouri cases address how incorporation by reference of a portion of another contract containing a choice of law provision will affect the interpretation of a different portion of a subcontract. As a matter of common sense, however, we think that it would foster the principles set out in Sections 6(d), 6(f), and 6(g) of the Restatement—that is, the principles of certainty, predictability, and uniformity of result; ease in determination and application of the law to be applied; and protection of the justified expectations of the parties—to apply the same law to the various provisions of the subcontract unless application of the five factors set out in Section 188(2) indicates that the law of some other jurisdiction has a more significant relationship to the particular issue before the Court. With this in mind we proceed to review how the five factors set out in Section 188(2) apply to the indemnification provision which we are called on to interpret here.

C.  Application of Five Factors in Restatement § 188(2).

Factor (a) under Section 188(2) is the place of contracting. Comment (e) to Section 188 nonetheless cautions that "[s]tanding alone, the place of contracting is a relatively insignificant contact." Missouri cases agree. *See, e.g., Hartzler v. American Family Mutual Ins. Co.,* 881 S.W.2d 653, 655 (Mo.App. 1994) (place of contracting is by itself of little importance now that most significant contacts analysis is used). In many cases, however, the state of contracting also has other contacts with the parties. For instance, it may also be the state of negotiation or the state of performance. The importance of the state of contracting can be gauged only after it is determined whether the indicated state has other contacts with the parties as well.

The Restatement and prior Missouri cases agree that the place of contracting is the place where the last act necessary to form the contract occurs. *See Whitney v. Country Wide Truck Serv., Inc.,* 886 S.W.2d 154, 155 (Mo.App.1994); *Osage Homestead, Inc. v. Sutphin,* 657 S.W.2d 346, 352 (Mo.App.1983); Restatement (Second) of Conflict of Laws § 188 cmt. e. In this case, the contract was signed by Huber in Missouri on March 4, 1991. P&S had already begun work in Kansas, with Huber's acquiescence, on January 24, 1991, however, forty days before Huber

---

1.  This incorporation provision states:

It is further understood and agreed by the parties hereto that the General Contractor has entered into a contract in writing with the owner of said building to be constructed, and that in said contract certain powers and duties are conferred upon the said Architects, and it is understood and agreed that *insofar as applicable to this Contract, the terms of said Contract between the General Contractor and the Owner with reference to said Architects shall be and hereby are made a part of this Contract.*

It is further understood and agreed by the parties hereto that the General Contractor shall have the same rights and privileges against the Sub-Contractor in relation to the work required herein that the Owner has against the General Contractor under the General Contract, including liquidated damages, which is hereby made a part of this Sub-Contract, insofar as applicable.

signed the contract. This indicates that the parties considered the technical formation of the contract to be of little importance.

Factor (b) is the place of negotiation. Comment (e) to Section 188 tells us that:

The place where the parties negotiate and agree on the terms of their contract is a significant contact. Such a state has an obvious interest in the conduct of the negotiations and in the agreement reached. *This contact is of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone.*

Restatement (Second) of Conflict of Laws § 188 cmt (e) (emphasis added). Section 188(3) also admonishes us that "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied...." *Id.* § 188(3). Here, the negotiations for the subcontract took place in both Missouri and Kansas.[2] Thus, the place of negotiation by itself does not point to either state's law. We thus turn to consideration of factor (c), the place of performance.

Huber argues that Missouri is the place of performance because that is where Mr. Dillard brought suit against Huber, and so P&S's indemnification obligation would take place in Missouri. It is fortuitous that Mr. Dillard brought suit in Missouri, however. It was chosen due to Mr. Dillard's domicile, and not because the contract had any particular relationship with Missouri. Indeed, if a second worker who was a Kansas resident had been injured in the same accident, he might well have sued in Kansas. If we adopted Huber's argument, Kansas law would be applied to that suit. This would mean that the same indemnity provisions in the same contract between the same parties would be given a different effect in two suits brought against the same parties based on the same accident. We think that such a result would

be inconsistent with the guiding principles set out in sections 6(d), 6(f), and 6(g) that the choice of law determination should protect the justified expectations of the parties, should yield certainty, predictability, and uniformity of results, and should foster ease of determination and application of the law to be applied.

More basically, we disagree that indemnification in this case should be considered to be performed at the place of the underlying lawsuit by Mr. Dillard. It could more logically be considered to be performed at the place where payment of the indemnity is made; yet that location is as yet unknown and cannot play any part in this analysis. Given this circumstance, it seems more logical that the "place of performance" factor in this context refers to the place of performance of the subcontract that contains the indemnity provision, since the location of the payment itself is unknown and irrelevant for the reasons just noted. Here, of course, the place of performance of the subcontract is Kansas, where the building is being built. In addition, Mr. Dillard was injured in Kansas, and he was covered by worker's compensation in Kansas.

Kansas is also the state favored by factor (d), the location of the subject matter of the contract. The subject matter of the contract was masonry work on a Kansas building project.

Factor (e) is the place of incorporation and place of business of the parties. This factor weighs slightly in favor of Missouri, where both P&S and Huber are incorporated. P&S's only office and its place of business, however, are located in Lenexa, Kansas, thus lessening the weight we give to Missouri as the place of incorporation.

In sum, of the five factors set out in Section 188, factors (a) and (b)—the state of contracting and of negotiation—really favor neither state; factor (e) slightly favors Missouri; while factors (c) and (d) favor Kansas.

---

**2.** Huber, acting as general contractor for the project, made a request for bids from subcontractors from its office in Kansas City, Missouri. P&S submitted a bid from its Lenexa, Kansas, office. The parties did not engage in personal discussions about the terms of the subcontract or the indemnity provisions. All contact between the parties was by mail. Huber mailed its acceptance of the bid and proposed contract from Missouri to Kansas. P&S submitted the completed contracts to Huber by mail from Kansas to Missouri.

As noted above, the contract also incorporates a portion of the Huber–Archbishop contract, and that contract is governed by Kansas law. In these circumstances, and in interpreting these factors in light of the principles set out in Section 6, we will apply Kansas law to the interpretation of the indemnity provision of the subcontract.

### D. We Adopt Only the Local Law of Kansas, Not its Conflict of Laws Rules.

Huber further argues that even if Kansas law does apply, Kansas choice of law rules in turn require us to apply the law of the place where the last act necessary to form the contract occurred. Because Huber claims that the last act necessary to form this subcontract took place in Missouri, where it was signed by Huber, Huber contends that Missouri law should apply.

Although Huber does not identify by name the legal principle underlying its argument, it is simply an application of a doctrine known as "renvoi."[3] If we were to apply "renvoi" here, it would mean that, because our own conflict of laws rules point us to the law of Kansas, we must adopt *all* of Kansas law, including its conflict of laws rules. Because (according to Huber) those conflict of laws rules in turn direct us back to Missouri, we therefore must go full circle and apply Missouri law after all.

As Huber notes, the principles of "renvoi" were applied by the Eastern District of this Court in *Brown v. Brown,* 678 S.W.2d 831 (Mo.App.1984). After holding that under Missouri's conflict of laws rules North Carolina law should apply, *Brown* went on to adopt the conflict of laws rules of North Carolina. Noting that North Carolina conflict of laws rules would favor the application of Missouri law, *Brown* proceeded to construe the agreement under Missouri law. It did so without recognizing it was applying the doctrine of "renvoi" and without analyzing whether Missouri has adopted this doctrine.

Missouri has not done so. As noted earlier, Missouri has adopted the Restatement approach to conflict of laws analysis in contract cases. The first paragraph of Restatement Section 188 states:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the *local law* of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

Restatement (Second) of Conflict of Laws § 188 (emphasis added).

The term "local law" is defined in Restatement Section 4:

> the "local law" of a state is the body of standards, principles and rules, exclusive of its rules of Conflict of Laws, which the courts of that state apply in the decision of controversies brought before them.

*Id.* § 4. That is to say, a state's local law is its substantive law, exclusive of its conflict of laws rules. Thus, Section 188 directs a court to adopt only the local, or substantive, law of the jurisdiction which has the most significant relationship with the issue, and not also to adopt the conflict of laws rules of that jurisdiction.

In accordance with the Restatement approach, Missouri cases other than *Brown,* after determining that the law of another state should be applied under the "most significant contacts" approach, apply the local, substantive law of that other state. *See, e.g. Ernst v. Ford Motor Co.,* 813 S.W.2d 910, 921 (Mo.App.1991) (Missouri will apply its own procedural and choice-of-law rules but will apply the "local" law of the state identified through application of those choice of law rules); *D.L.C.,* 908 S.W.2d at 794; *Harter v. Ozark–Kenworth, Inc.,* 904 S.W.2d 317, 320 (Mo.App.1995).

These cases do not go on to also apply a foreign jurisdiction's conflict of laws rules simply because they are applying that jurisdiction's substantive law. Although they do not discuss the issue, it is evident that they do not do so because the Restatement directs

---

**3.** *See* Black's Law Dictionary 1298 (6th ed. 1990) (Under the doctrine of "renvoi" a court "adopts rules of foreign law as to conflict of laws, which rules may in turn refer court back to law of forum.").

them to adopt only the foreign jurisdiction's local law, not its conflict of laws rules. To the extent that *Brown* holds otherwise, we disagree with its analysis. For these reasons, we reject Huber's invitation to apply a "renvoi" analysis here. We hold that the indemnification issues are governed by Kansas law.

## IV. INDEMNIFICATION FOR HUBER'S OWN ATTORNEY'S FEES

■ Kansas, like Missouri, follows the "American Rule" that the parties to litigation normally bear the cost of their own attorney's fees. Kansas recognizes exceptions to this rule where attorney's fees are provided for by Supreme Court rule or by statute or contractual language, however. *Dillard,* 884 S.W.2d at 724–25 n. 6; *Chetopa State Bancshares, Inc. v. Fox,* 6 Kan.App.2d 326, 628 P.2d 249, 256 (1981).

Here, Huber argues that the language of the indemnity provision of its subcontract with P&S provides for such fees. The language in question states that P&S will:

> save the General Contractor [Huber] harmless *from any liability, loss, cost or expenses, resulting from injuries or damages to persons or property caused by either the General Contractor [Huber] or the Sub–Contractor or by their work.*

(emphasis added).

Huber admits that this language does not expressly mention attorney's fees. Huber argues, however, that Kansas would nonetheless permit indemnity for attorney's fees even here because, Huber claims, the parties'

intent to include such fees is clearly evident from the breadth of the language used in the indemnity provision. And, as Huber notes, under Kansas law:

> A contract of indemnity is construed in accordance with the rules for construction of contracts generally. The cardinal rule is to ascertain the intent of the parties and to give effect to that intention if it can be done consistently with legal principles.

*Bartlett v. Davis Corp.,* 219 Kan. 148, 547 P.2d 800, 807 (1976) (quoting 41 Am.Jur.2d Indemnity § 13); *Missouri Pac. R.R. Co. v. City of Topeka,* 213 Kan. 658, 518 P.2d 372, 376 (1974); *Chetopa,* 628 P.2d at 255.

Huber then cites us to a number of non-Kansas cases which have held that language comparable to that used in the subcontract does include attorney's fees even though the words "attorney's fees" are not used in the contract in question.[4] Huber also notes that no Kansas case has held that the type of language used here does *not* include attorney's fees. While that is so, it is also true that there is no case in which the Kansas courts have allowed contractual indemnification for attorney's fees where the words "attorney's fees" were not explicitly set out in the contract. In addition, a number of Kansas cases have stated that Kansas follows the rule that attorney's fees are recoverable by contract only if the contract contains express language so providing. *See, e.g. Chetopa* 628 P.2d at 256 and cases cited therein.

While Kansas has recognized a few exceptions to this rule not relevant here,[5] we are confident that it would not recognize an ex-

---

4. *See, e.g. Monical & Powell, Inc. v. Bechtel Corp.,* 404 S.W.2d 911 (Tex.Civ.App.1966); *Zissu v. Bear, Stearns & Co.,* 627 F.Supp. 687 (S.D.N.Y. 1986); *Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg,* 882 F.Supp. 713 (N.D.Ill.1995).

5. The Kansas cases Huber cites which it asserts permit indemnity for attorney's fees even where not provided for by statute or contract are all distinguishable. For example, in *Chetopa,* the Court of Appeals allowed indemnification for attorney's fees because the contract explicitly included the words "attorney fees" in the indemnification provision. In *Duggan v. Rooney,* 749 F.Supp. 234 (D.Kan.1990) and *Wilshire Oil Co. of Texas v. Riffe,* 409 F.2d 1277 (10th Cir.1969), recovery of attorney's fees was allowed because of the existence of an exception stating that when

a plaintiff has been forced to litigate against a third party because of some tortious conduct of the defendant, the plaintiff is allowed to recover attorney's fees from the defendant. This situation is distinct from that where a party is trying to recover its attorney's fees for bringing suit against the defendant. Finally, *Fort Scott v. Pen Lubric Oil Co.,* 122 Kan. 369, 252 P. 268 (1927), involves this same exception, although not explicitly stated by the court. In that case, a city sued an oil company for indemnity after the city was held liable to a pedestrian injured by the oil company's negligence. In addition to the personal injury award it paid to the injured party, the city was also allowed to recover it attorney's fees incurred in defending the pedestrian's suit.

ception in this case in light of two other principles of law which govern interpretation of contracts under Kansas law. First, it is a basic Kansas rule of contract construction that "doubtful or uncertain language in a contract is construed against the party preparing the contract, for he has created the troublesome ambiguity." *Foltz v. Begnoche,* 222 Kan. 383, 565 P.2d 592, 597 (1977). Here, Huber prepared the contract provisions, and they did not clearly and unambiguously provide indemnity for attorney's fees. Moreover, it is evident that Huber knew how to more clearly provide for payment of attorney's fees, because the general contract between Huber and the Archbishop did use language expressly providing for indemnity for attorney's fees. *See Dillard,* 884 S.W.2d at 724. Any ambiguities in the subcontract's coverage of attorney's fees must therefore be construed against Huber.

Second, the provision in question purports to provide indemnity even where the injuries were caused by Huber's own negligence. As we recognized in the prior appeal of this case, Kansas will give effect to a provision indemnifying a party for its own negligence. *See Dillard,* 884 S.W.2d at 724. Such provisions are particularly strictly construed, however, and the right to such indemnity will only be found where there is clear and unequivocal language so providing. *Zenda Grain & Supply Co. v. Farmland Indus.,* 20 Kan.App.2d 728, 894 P.2d 881, 887 (1995) (such contracts will be strictly construed); *Elite Professionals, Inc. v. Carrier Corp.,* 16 Kan.App.2d 625, 827 P.2d 1195, 1202 (1992) (accord).

Applying these rules of contract construction to the indemnity provision in question, we hold that the subcontract does not provide for indemnity for Huber's own attorney's fees incurred in defending Mr. Dillard's claims. The fact that some other jurisdictions have permitted recovery of attorney's fees by broadly interpreting the parties' intent in using similar indemnity provisions is not determinative, for Kansas would more narrowly interpret such contractual language.

## V. INDEMNIFICATION FOR ATTORNEY'S FEES PAID TO ARCHITECT AND ENGINEER

■ P&S argues that the principles just discussed also preclude Huber from recovering indemnity for the amounts it paid to SFS and SEA to settle their claims for indemnity against Huber. In support, P&S points out that most of the settlement money went to reimburse SFS and SEA for the attorney's fees they incurred in defending Mr. Dillard's claims. For these same reasons, P&S argues, Huber cannot recover the moneys it expended in defending Mr. Dillard's claims against the Archbishop.

We disagree. The rules discussed above preclude indemnity for one's own attorney's fees in the absence of an express contractual provision so providing. In Counts II and III, however, Huber does not seek to recover its own attorney's fees. To the contrary, it seeks to recover moneys it expended in defending the Archbishop pursuant to a provision of its contract with the Archbishop requiring it to provide such a defense, and in settling a claim against it by SFS and SEA for moneys it owed them under a provision of that same general contract.

Such expenditures by Huber come within the broad language of the subcontract provision requiring P&S to indemnify Huber for "any liability, loss, cost or expenses" resulting to Huber from injuries such as that to Mr. Dillard. Clearly, the amounts paid to SFS and SEA were in settlement of a liability of Huber to those parties. Similarly, the amounts paid in defense of the Archbishop were costs or expenses incurred by Huber under its contract as a result of the injury to Mr. Dillard.

The fact that these expenses in turn largely consisted of reimbursement of fees those other parties had expended is fortuitous; to Huber, they simply constituted liabilities and costs, not attorney's fees. In contrast to the costs Huber spent on its own defense, we believe these are the kinds of liabilities that would have been within the parties' intentions when drafting an indemnity agreement. The trial court erred in holding otherwise.

Accordingly, we affirm the trial court's grant of summary judgment to P&S on Huber's claim in Count I for its own attorney's fees incurred in defending Mr. Dillard's claims. We reverse the trial court's grant of summary judgment to P&S on Huber's claims in Counts II and III for the moneys it paid to SFS, SEA, and the Archbishop. We remand for further proceedings consistent with this opinion.

All concur.