STATE ex rel. Rafael CASTILLO,
Relator,

v.

Honorable Thomas C. CLARK,
Respondent.

No. 76506.

Supreme Court of Missouri,
En Banc.

Aug. 15, 1994.
Rehearing Denied Sept. 20, 1994.

James M. Dowd, Henri J. Watson, Kansas City, for relator.

James Stubbs, R. Scott Smith, Cary Miller, Kansas City, for respondent.

## ORIGINAL PROCEEDING
## IN PROHIBITION

PRICE, Judge.

Relator Rafael Castillo requests a permanent writ prohibiting the Honorable Thomas C. Clark from ordering the production of his treating physician's report under Rule 60.01.[1] Relator contends that the Rule encompasses only examining physicians, and that treating physicians are excluded. We hold that Rule 60.01 includes both treating and examining physicians within its scope. The preliminary writ is quashed.

### I.

Relator Rafael Castillo and Eloise Brown were in an automobile accident in which Castillo was injured. Following the accident, Castillo sought treatment from Dr. Julian Nunez. Castillo's attorney played no part in retaining Dr. Nunez. Castillo subsequently filed suit against Brown for personal injury. On January 4, 1993, Castillo listed Dr. Nunez as a treating physician in his response to interrogatories. On January 12, 1993, Castillo gave Brown a medical authorization to obtain his medical records. On July 30, 1993, Castillo listed Dr. Nunez as an expert witness in a supplemental interrogatory answer.

On May 24, 1993, Castillo submitted to an independent medical examination by Dr. Ernest Neighbor pursuant to Rule 60.01. He thereafter requested and received a copy of Dr. Neighbor's report of the examination. Brown then sought a copy of Dr. Nunez's report. Castillo responded that Nunez had not prepared a report and that Dr. Nunez's opinions as an expert were discoverable only under Rule 56.01(b)(4).

On August 18, 1993, Brown filed a motion to compel Castillo to require Dr. Nunez to write a report and to produce it to her. On August 20, 1993, at the pretrial conference, Judge H. Michael Coburn suggested in lieu of ruling on the motion that the parties agree to conduct a telephonic interview with Dr. Nunez prior to the trial. The parties agreed, and Brown agreed to pay a reasonable fee for Dr. Nunez's time. Brown contends the agreement was contingent upon the scheduling of the interview before 12:00 p.m. on August 25, 1993, trial apparently being set for September 1, 1993. Castillo disagrees with this contention.

Castillo's counsel informed Brown's counsel of Dr. Nunez's availability at 9:00 a.m. August 27, 1993, and that Dr. Nunez's fee was $600 per hour. As Dr. Nunez stated that he would require an hour to prepare and that the minimum fee for the interview itself would be $600, the interview would have cost Brown at least $1,200, which Dr. Nunez wanted paid in advance. Prior to the interview, Brown's counsel informed Castillo's counsel that he did not want to proceed with the interview on that basis and that he would take up the matter with Judge Coburn.

Judge Coburn was out of town the week of August 23. On August 30, Brown served upon plaintiff a motion in limine to exclude Dr. Nunez's testimony. At some point, the case was transferred to Judge Clark.[2] At approximately 10:00 a.m. on September 1, the first day of trial, Judge Clark ordered Castillo to produce a report by Dr. Nunez no later than 7:00 p.m. that day or risk that Dr. Nunez would be precluded from testifying.[3]

---

1. Castillo obtained a writ of prohibition from the western district. We granted transfer. This matter is treated as an original proceeding in which we have issued a preliminary writ. When a trial court abuses its discretion in discovery proceedings, prohibition is the proper remedy. *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 927–28 (Mo. banc 1992).

2. The parties do not specify a reason for this change of judges.

3. Judge Clark's order dated September 1, 1993, stated:

    Just cause having been shown, defendant's motion in limine to exclude the testimony of Dr. Julian Nunez is sustained in part and

## II.

■ Castillo asserts that he cannot be required to provide a copy of Dr. Nunez's report to Brown because a treating physician is not an examining physician as contemplated by Rule 60.01.[4] Castillo makes a number of arguments to support his position. First, he cites two workers' compensation cases, *Lutman v. American Shoe Machinery Co.*, 151 S.W.2d 701 (Mo.App.1941), and *Johnson v. Park N Shop*, 446 S.W.2d 182 (Mo.App. 1969). These cases hold that a physician may be an examining physician without necessarily being a treating physician. "An examination is, of course, made for the purpose of diagnosing the condition complained of, after which the question of treatment arises." *Lutman*, 151 S.W.2d at 709; *see also John-*

*son*, 446 S.W.2d at 188. Castillo misreads these cases in attempting to apply them to the present situation. While an examining physician need not provide treatment to a patient, a treating physician must necessarily have examined the patient prior to providing treatment.[5] It cannot be reasonably argued that treatment can be provided without a diagnosis of the condition the patient is suffering from.[6]

Castillo also cites a line of cases holding that Rule 60.01, or the corollary Federal Rule 35, applies only to reports of medical examinations and not to other hospital or office medical records. *Cash v. Bolle*, 423 S.W.2d 743, 748 (Mo. banc 1968); *Butts v. Sears, Roebuck & Co.*, 9 F.R.D. 58, 59

---

IT IS HEREBY ORDERED, that plaintiff shall produce a report consistent with Rule 60.01(b) regarding any examining physician's findings, including results of all tests made, diagnosis and conclusions to counsel for the defendant;

IT IS FURTHER ORDERED, that said report or reports shall be produced no later than 7:00 p.m., September 1, 1993.

IT IS SO ORDERED.

Should Dr. Nunez not comply, he shall risk being precluded from testifying at trial.

4. Rule 60.01 is largely parallel to Federal Rule of Civil Procedure 35. Most other states also have adopted some version of Federal Rule 35. Since this case was filed, Rule 60.01 has been amended to include reports of "other appropriate licensed health care providers" as well as those of physicians. *Rule 60.01(a)*, effective January 1, 1994. The text of Rule 60.01 as it was in effect at the time of this case is as follows:

*(a) Order for Examination.* In an action in which the mental or physical condition or the blood relationship of a party, or of an agent or a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to physical or mental or blood examinations by a physician or physicians or to produce for such examinations his agent or the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person against whom the order is sought and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

*(b) Report of Findings.*

(1) If requested by the party against whom an order is made under Rule 60.01(a) or the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting

out his findings, including results of all tests made, diagnosis and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a party, the party shows that he is unable to obtain it. The court on motion shall make an order against a party requiring delivery of a report on such terms as are just, and if a physician fails or refuses to make a report the court may exclude his testimony if offered at the trial.

(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the person examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition.

(3) Subdivisions (b)(1) and (2) apply to examinations made by agreement of the parties unless the agreement expressly provides otherwise, and do not preclude discovery of a report of an examining physician or the taking of a deposition of the physician in accordance with the provisions of any other rule.

5. Other jurisdictions also have held that treating physicians fall within the rule. *See, e.g., Morris v. Platnik*, 85 N.J.Super. 121, 204 A.2d 29, 32 (1964).

6. It might be argued that a treating physician could rely upon the examination of a previous physician without conducting an examination of his or her own. There are no facts in the record to support such an argument here.

(D.D.C.1949); *Weir v. Simmons,* 233 F.Supp. 657, 660 (D.Neb.1964). He argues the rationale of these cases is to distinguish between records of examination and records of treatment. These cases, however, do not imply in any way that a treating physician's examination activities are to be treated differently from those of a physician who merely examines the patient. They simply recognize that Rule 60.01 provides a simplified alternative for the exchange of examination reports, leaving the remainder of medical records subject to the other more customary methods of discovery. *See State ex rel. Washington University v. Gallagher,* 797 S.W.2d 726, 728–29 (Mo.App.1990).

Castillo also cites *State ex rel. McCloud v. Seier,* 567 S.W.2d 127 (Mo. banc 1978), as an example where this Court refused to compel the production of a treating physician's report. The primary thrust of *McCloud,* however, was that a defendant may not call upon the plaintiff's treating physician to serve as the defendant's examining physician under Rule 60.01. *Id.* at 128. This Court's decision was based not upon a distinction between a report from a treating physician and one from an examining physician, as Castillo argues, but upon a reluctance to condone such gamesmanship and to place a physician into a "position of conflict". *Id.*

■ Castillo also asserts that, since the physician-patient privilege regarding treating physicians is automatically waived when suit is filed, the express waiver in Rule 60.01(b)(2) must be indicative that the rule is meant only to apply to examining physicians who do not treat the patient. The waiver provision of Rule 60.01(b)(2) is plainly a general waiver of "*any* privilege" a party "*may* have"; it does not imply the presence or absence of any particular privilege. (Emphasis added.)

■ Finally, both Castillo and Respondent argue the issue of whether or not Dr. Nunez should be classified as an expert witness under Rule 56.01. However, whether Dr.

Nunez is a fact witness who would testify regarding observations and known facts or an expert witness who would testify regarding opinions and conclusions, or even whether this distinction can be made at all, does not affect the outcome of this case, as Rule 60.01 speaks only to physicians and does not distinguish between those who are and are not experts.[7]

### III.

As a general matter, the rules of civil discovery were intended to allow parties to litigation to obtain information relevant to their dispute as quickly and inexpensively as possible. They were not intended to be a battleground where victory is awarded to the most clever and combative adversary.

■ Rule 60.01 was carefully designed to allow reciprocal exchange of physicians' reports at the examined party's option, "to eliminate uncertainty concerning the medical aspects of the cause and permit the preparation of an intelligent and informed defense." *State ex rel. McCloud v. Seier,* 567 S.W.2d 127, 128 (Mo. banc 1978). In the event that the examined party does not choose to trigger the mutual exchange by requesting a copy of the examining physician's report, discovery must proceed through other methods. *Rule 60.01(b)(3); Weir v. Simmons,* 233 F.Supp. 657, 660 (D.Neb.1964).

■ If Rule 60.01 is triggered by the examined party, it requires production of a "like report of any examination, previously or thereafter made", contemplating a document setting out the examiner's "findings, including results of all tests made, diagnosis and conclusions, together with like reports of all earlier examinations of the same condition."[8] Rule 60.01 does not require production of all communications between the physician and his or her patient or the patient's attorneys. Neither does it include hospital records or physicians' office records. *Cash v. Bolle,* 423 S.W.2d 743, 748 (Mo. banc 1968); *Butts v.*

---

7. For a discussion of the classification of witnesses, see *Owen v. City of Springfield,* 741 S.W.2d 16, 20 (Mo. banc 1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988); *Stone v. Duffy Distributors, Inc.,* 785 S.W.2d 671, 675–76 (Mo.App.1990).

8. This is the same standard as that to which the party causing the initial examination must adhere in producing a report upon request to the examined party. *Rule 60.01(b)(1).*

*Sears, Roebuck & Co.*, 9 F.R.D. 58, 59 (D.D.C.1949); *Weir v. Simmons*, 233 F.Supp. 657, 660 (D.Neb.1964). The rule was designed to operate independently of Rule 56.-01(b)(4) and to provide each party with the medical reports of physicians who will testify at trial.

■ It is also of significance to note that the harshest remedy for nonproduction of a report is the possible preclusion of the physician from giving testimony.[9] ***Rule 60.-01(b)(1).*** Contrast this with Rule 61.01(e), which includes dismissal of the case as a possible sanction for failing to appear for a physical examination pursuant to Rule 60.01. Thus, as a practical matter the examined party need not go to excessive lengths to obtain reports from health care providers whose testimony will not be offered at trial. Of course, Rule 60.01 does not prevent discovery that may otherwise be had under any other rule if a report is not requested or provided.

### IV.

■ Accordingly, Judge Clark was correct in determining that Castillo was required to produce a report of his examination for Brown. Further, Judge Clark did not abuse his discretion in ordering the production of the report from Dr. Nunez by 7:00 p.m. Rule 60.01(b)(1) states that the court "on motion shall make an order against a party requiring delivery of a report on such terms as are just". Castillo's arguments of hardship on Dr. Nunez and of potential errors due to haste are not persuasive, especially in light of the fact that Castillo had ample opportunity to produce the report at an earlier point in the litigation. Additionally, re-

quiring the report by 7:00 p.m. was not an unreasonable demand.[10] If any party might have suffered hardship, it was Brown, who was denied access to Dr. Nunez's report until midtrial. In some sense, however, she accepted this risk by failing to proceed with the telephonic interview suggested by Judge Coburn.

Judge Clark had the authority to exclude Dr. Nunez's testimony without giving Castillo another opportunity to produce a report. Consequently, Judge Clark's decision was more generous than Castillo might have expected. Any burden to Castillo was brought upon himself.

We hold that Judge Clark acted within his discretion, and the writ is quashed.

All concur.

---

9. Preclusion of the examiner's testimony is subject to the discretion of the trial judge. See *Kerns v. Consolidated Rail Corp.*, 90 F.R.D. 134, 138 (D.Penn.1981), *aff'd*, 673 F.2d 1299 (3d Cir. 1981); *Barry v. Don Hall Laboratories*, 56 Or. App. 518, 642 P.2d 685, 690 (1982) (construing similar Oregon rule). Interestingly, an Arizona court of appeals has determined that a court may exclude testimony only "when the doctor himself failed or refused to make such report after being ordered by the court to do so." *Simpson v. Heiderich*, 4 Ariz.App. 232, 236, 419 P.2d 362, 366 (App.1966). We are not inclined to adopt this reasoning, because the court has jurisdiction

over the parties, not the physicians, and it is the parties, not the physicians, who have the stake in the litigation. Should a physician be uncooperative despite the best efforts of the party to obtain a report, the trial court is free to impose a lesser, or no, sanction.

10. At least one other jurisdiction has held that it was unexceptionable to require a doctor to prepare a report before resuming the stand the next day. *Gibson v. Kennedy*, 23 N.J. 150, 128 A.2d 480, 486 (1957). Great discretion is accorded to judges in handling such matters in a fair and practical way during trial.