Joshua GOEDE, Joel D. Goede, Bethany J. Goede, Barbara J. Foster and Robert L. Foster, Jr., as the Surviving Heirs of Stephanie L. Foster, Deceased, Plaintiffs–Respondents,

v.

AEROJET GENERAL CORPORATION, and Aerojet International, Inc., Defendants–Appellants.

No. ED 82833.

Missouri Court of Appeals, Eastern District, Division Three.

May 11, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 10, 2004.

Application for Transfer Denied Sept. 28, 2004.

Joel D. Monson, Francis X. Duda, St. Louis, MO, for appellants.

William A. Kohlburn, Ted N. Gianaris, East Alton, IL, Michael B. Marker, East St. Louis, IL, for respondents.

LAWRENCE E. MOONEY, Judge.

The defendants, Aerojet General Corporation and Aerojet International, Inc., (collectively Aerojet) were found liable for the wrongful death of Stephanie Foster, who died from mesothelioma, a very painful cancer caused by exposure to asbestos. Aerojet appeals, alleging a host of trial-court errors in its eight points on appeal. Aerojet challenges the submissibility of the plaintiffs' claims, and alleges the trial court erred in its denial of Aerojet's motion for new trial, its removal of ultimate fact issues from the jury as a sanction for discovery violations, its exclusion of expert testimony, its choice of law to govern damages, its verdict-directing instructions, and its denial of remittitur. Lastly, Aerojet contends the cumulative effect of all these alleged errors warrants reversal and remand for a new trial. We affirm.

*Factual and Procedural Background*

Stephanie was born in California, in 1959. Stephanie's father, Robert Foster, worked as a machinist for a company known as Automation Progress, which machined parts for Aerojet. Aerojet at that time was a government defense contractor engaged in producing intercontinental ballistic missiles for the United States Defense Department. Over approximately a six-month period in the early 1960s, employees of Automation Progress, including Mr. Foster, machined an asbestos-containing part for Aerojet from an asbestos material provided by Aerojet. Machining these parts produced substantial quantities of asbestos-containing dust. The dust permeated Mr. Foster's clothing. As there were no changing facilities at his workplace, Mr. Foster went home daily with asbestos-laden dust on his clothes, thereby exposing Stephanie to the asbestos-containing dust. Experts at trial opined that Stephanie's exposure to asbestos via her father's work clothes during this time

caused or contributed to cause her subsequent mesothelioma and her resulting death.

The Foster family moved from California to a farm in Wisconsin in 1966. Stephanie lived on this farm until she was married twelve years later. During this time period, Mr. Foster performed maintenance on several tractors, including a Massey Ferguson tractor. Maintenance on these tractors also allegedly exposed Mr. Foster and Stephanie to asbestos-containing materials. These events formed the basis of the plaintiffs' cause of action against AGCO. Defendant AGCO Corporation is the successor to the Massey Ferguson Company.

Mr. Foster and his wife moved to Missouri in 1985. Stephanie remained in Wisconsin until 1999, at which time she and her three children moved to Missouri. Stephanie started to experience chest pains and shortness of breath in September of 2000, and was subsequently diagnosed with mesothelioma in March of 2001. Mesothelioma begins by attacking the pleural lining of the lungs, and the cancer eventually spreads to encase the lungs, as well as invading the diaphragm, the lining around the heart, and the muscles and ribs of the chest wall. Due to the nature of the disease, Stephanie progressively lost lung function. Stephanie had already lost 50 percent of her ability to breathe by August of 2001, some seven months before she died. Stephanie underwent chemotherapy, which resulted in vomiting and dehydration. From the time she was diagnosed until her death, Stephanie lost a considerable amount of weight. Stephanie also experienced intractable pain, despite taking a number of narcotics to help control the pain. Stephanie died in March of 2002, at the age of 43, survived by her parents and

her three children, Joshua, Joel, and Bethany Goede.

Stephanie initially filed suit in this case in September of 2001, asserting claims of strict liability, negligence, and willful and wanton misconduct against a number of defendants. Following Stephanie's death, her parents and children continued the lawsuit, filing an amended petition pursuant to Missouri's wrongful-death statute. After a contentious discovery battle between the plaintiffs and Aerojet, the plaintiffs proceeded to trial in November of 2002 against Aerojet, ACGO, and General Gasket Corporation. All other defendants settled and/or were dismissed before trial. General Gasket was dismissed before the case was submitted to the jury. The jury returned a verdict in favor of ACGO, and the plaintiffs seek no relief regarding this verdict. The jury, however, found Aerojet liable on all four submitted claims—strict liability, strict liability—failure to warn, negligent failure to warn, and negligence *per se* for violation of the Walsh–Healey Act. The jury assessed damages of $5,119,000. The damages included $3,000,000 for actual emotional and economic damages for the wrongful death of Stephanie, $2,000,000 for Stephanie's pre-death pain, suffering, and emotional distress, and $119,000 for lost wages and medical expenses. The award was offset by prior settlements already recovered by the plaintiffs, yielding a final judgment of $1,731,500. The trial court denied all post-trial relief, except for granting judgment notwithstanding the verdict on the Walsh–Healey claim. Aerojet now appeals.

*Discussion*

*Submissibility of Plaintiffs' Claims*

■ We begin our discussion by addressing Aerojet's challenge to the submissibility of the plaintiffs' claims. Aerojet, in

its third point on appeal,[1] alleges the trial court erred in denying Aerojet's motion for judgment notwithstanding the verdict because the plaintiffs failed to present a submissible case on their strict liability and negligence claims. Aerojet argues that the plaintiffs did not present a submissible case on strict liability because they did not prove the required elements of causation or knowledge. Additionally, Aerojet argues the plaintiffs did not present a submissible case on negligence because Aerojet did not have a duty with regard to the decedent or her father, and because the plaintiffs did not prove causation. We find Aerojet failed to preserve the issue of submissibility for appellate review, as these grounds were not raised in Aerojet's motion for directed verdict at the close of all evidence.

To preserve the question of submissibility for appellate review in a jury-tried case, a motion for directed verdict must be filed at the close of the plaintiff's case and again at the close of all evidence. *Frisella v. Reserve Life Ins. Co. of Dallas, Tex.*, 583 S.W.2d 728, 731 (Mo.App. E.D. 1979); *see also Millar v. Berg*, 316 S.W.2d 499, 502 (Mo.1958). Thereafter, in the event of an adverse judgment, the defendant should assign the trial court's failure to direct the verdict as error in an after-trial motion. *Id.* A motion for judgment notwithstanding the verdict is a motion to have judgment entered in accordance with the motion for directed verdict. *Hatch v. V.P. Fair Foundation, Inc.*, 990 S.W.2d 126, 137 (Mo.App. E.D.1999). Thus, a sufficient motion for directed verdict at the close of all the evidence is required to preserve the motion for judgment notwithstanding the verdict for appeal. *Id.; Dierker Associates, D.C., P.C. v. Gillis*, 859

S.W.2d 737, 743 (Mo.App. E.D.1993). Rule 72.01(a) requires that a motion for a directed verdict state the specific grounds for the motion. *See Hatch*, 990 S.W.2d at 137. A motion for directed verdict that does not include specific reasons or grounds for the motion neither presents a basis for relief in the trial court nor is sufficient to preserve the issue for appellate review. *Fust v. Francois*, 913 S.W.2d 38, 45 (Mo.App. E.D.1995); *Dierker Associates*, 859 S.W.2d at 743; *see also, Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 163 (Mo.App. W.D.1997).

In this case, Aerojet filed a motion for directed verdict at the close of the plaintiffs' evidence that raised the issue of submissibility of the plaintiffs' claims and stated the above-mentioned grounds regarding the submissibility of the plaintiffs' claims. Aerojet also made an oral motion for directed verdict at the close of all the evidence. However, the only issue raised as a basis for its motion for directed verdict at the close of all the evidence was the application of California damages law. Aerojet did not raise the question of the submissibility of the plaintiffs' claims, nor did Aerojet refer to or incorporate its previously made motion. Aerojet's failure to raise the question of the submissibility of plaintiffs' claims as grounds for its motion for directed verdict at the close of all the evidence precluded Aerojet from obtaining judgment notwithstanding the verdict on these grounds, and further precludes Aerojet from obtaining appellate review of the trial court's failure to enter judgment notwithstanding the verdict on these grounds. *See Hatch*, 990 S.W.2d at 137–8; *Letz*, 975 S.W.2d at 163–4.

1. For ease and clarity of our opinion, we address Aerojet's points on appeal out of order.

*Motion for New Trial*

In addition to its motion for judgment notwithstanding the verdict, Aerojet also moved for a new trial, on all issues. In moving for a new trial, Aerojet argued that the court had erred in instructing the jury regarding the Walsh–Healey Act,[2] because the plaintiffs had never pleaded a cause of action under the Act, neither decedent nor her father were within the class of persons protected by the Act, and because there is no private right of action under the Act. The trial court found that it had erred in instructing the jury regarding the Walsh–Healey Act, but rather than granting a new trial, the trial court instead granted judgment notwithstanding the verdict. Aerojet claims this was an insufficient remedy, and that the court erred in denying Aerojet's motion for a new trial. Aerojet argues it is entitled to a new trial because the entire trial was tainted by allegations, argument, and evidence regarding Aerojet's alleged violation of an Act that was never pleaded and had no application to the case.

■ Aerojet's allegation of error is basically a complaint that the evidence and argument relative to Walsh–Healey Act prejudicially affected the other claims submitted. Assuming, without so deciding, that the evidence and argument concerning the Walsh–Healey Act was erroneously admitted or allowed, it has long been held that "where evidence has been improperly admitted on issues not submitted to the jury for its determination, such admissions, even though erroneous, does not constitute reversible error." *Carthen v. Jewish Hosp. of St. Louis,* 694 S.W.2d 787, 796 (Mo.App. E.D.1985). To prevail on a claim of error regarding the admission of evidence or improper argument, an appellant must show prejudice. *See, e.g., Danneman v. Pickett,* 819 S.W.2d 770, 773 (Mo.App. E.D.1991)(evidence); *Henderson v. Fields,* 68 S.W.3d 455, 471 (Mo.App. W.D.2001)(argument). Prejudicial error occurs when evidence or argument tends to lead the jury to decide the case on some basis other than the established propositions in the case. *See, e.g., Kennedy v. Milligan,* 915 S.W.2d 784, (Mo.App. W.D. 1996); *Henderson,* 68 S.W.3d at 471; *Khan v. Gutsgell,* 55 S.W.3d 440, 443 (Mo. App. E.D.2001).

■ Yet Aerojet fails to specify how it was prejudiced by evidence and argument regarding the Walsh–Healey Act. Aerojet suggests, in conclusory fashion only, that if the jury had never heard of the Act, the jury could not have found Aerojet liable for failing to protect Mr. Foster and his daughter from asbestos exposure. Aerojet also complains that, in instructing the jury that its verdict *must* (as emphasized by Aerojet) be for plaintiffs if they believed Aerojet violated the Act, the court, in effect, told the jury that it could ignore all of the required elements of strict liability and negligence if it believed Aerojet violated

2. The Walsh–Healey Act is a federal statute that sets forth certain requirements for government contracts that include, *inter alia,* certain safety standards to be followed while performing work on government contracts. The Act provides that no part of a government contract subject to the Act will be performed nor will any of the materials, supplies, articles, or equipment to be manufactured or furnished under the contract be manufactured or fabricated in any plants or under working conditions that are unsanitary or hazardous or dangerous to the health and safety of the employees performing the contract. *See* 41 U.S.C. section 35 *et seq.* (1994 & 2000 supp.). The Act, enacted in 1951, was the first federal act relevant to safe handling of asbestos. *Abadie v. Metropolitan Life Ins. Co.,* 784 So.2d 46 (La.App. 5 Cir.2001). The Occupational Safety and Health Administration (OSHA) asbestos regulations superseded Walsh–Healey on December 31, 1971. These were thereafter superseded by a more comprehensive set of asbestos regulations in 1972. *Id.*

the Act. Aerojet argues that, under these instructions, the jury did not have to address whether Aerojet's product was dangerous, whether it failed to warn of the danger, or whether Aerojet was negligent. We disagree. The jury was told there were four separate claims in this case, and was separately instructed as to each theory submitted by the plaintiffs. The jury returned separate verdicts finding Aerojet liable as to each of those theories. We presume that the jury followed the instructions as given by the trial court. *See Lester v. Sayles*, 850 S.W.2d 858, 875 (Mo. banc 1993) (Covington, J., concurring in part and dissenting in part); *Barlow v. Thornhill*, 537 S.W.2d 412, 422 (Mo.1976); *Schaedler v. Rockwell Graphic Systems, Inc.*, 817 S.W.2d 499, 501 (Mo.App. W.D. 1991); *Rinker v. Ford Motor Co.*, 567 S.W.2d 655, 660(Mo.App.1978).

Lastly, Aerojet complains that in awarding lump-sum damages without assigning any amounts to any particular claim, there is no way to know whether all, some, or none of the jury's verdict was the product of improper allegations, argument, evidence and instruction relating to the Act. Aerojet claims that given the evidence and argument submitted regarding the Act, it could be presumed the damages award would have been much less, perhaps even nothing, had the jury never heard of the Act. But, Aerojet's speculation and conclusory arguments fail to explain how the evidence or argument caused the jurors to improperly find for the plaintiffs on the other counts or assess damages, and fails to persuade this Court that the trial court erred in denying Aerojet's motion for new trial. Point denied.

*Taking Ultimate Fact Issues From Jury*

We now turn to Aerojet's allegations of error regarding the trial court's rulings based upon Aerojet's conduct during the discovery period in this case, beginning with the court's imposition of sanctions. The trial court found that Aerojet intentionally withheld discoverable information from the plaintiffs concerning Aerojet's use of asbestos in its missiles, and had falsely responded to an interrogatory seeking information on that point. As a sanction, the trial court instructed the jury that two ultimate facts—the decedent's exposure to Aerojet's asbestos and Aerojet's knowledge of the hazards of asbestos— were to be taken as established facts. Aerojet does not appeal the court's finding that it intentionally withheld discovery and falsely responded to discovery. Instead, Aerojet challenges the sanction imposed. Aerojet alleges the trial court erred as a matter of law by taking these two ultimate fact issues away from the jury. Aerojet argues that it is for the jury to determine all ultimate facts, and that Rule 61.01 does not authorize the court to take a factual issue from the jury as a sanction for discovery violations. Further, Aerojet argues that, even if the court had the authority to remove questions of ultimate fact from the jury, the court's sanction was extreme and unwarranted, and an abuse of the court's discretion.

The plaintiffs' interrogatories in this case were initially served on Aerojet in September of 2001. One of the plaintiffs' interrogatories asked Aerojet to identify all asbestos-containing products that it "designed, manufactured, processed, sold, distributed, applied, installed, patented, specified, and/or re-labeled." Aerojet provided responses in late June of 2002, some nine months after being served with the requests, and four months prior to the start of trial. Aerojet objected to the interrogatory on the grounds it was vague, ambiguous, overly broad, burdensome, and not likely to lead to the discovery of admissible evidence. Subject to that objection, Aerojet responded that neither Aerojet

nor any related company or predecessor had "at any time" designed, manufactured, processed, sold, distributed, applied, installed, patented, specified, and/or re-labeled "any asbestos-containing product." Based on this denial, Aerojet evaded answering numerous other interrogatories, including those concerning Aerojet's knowledge and notice of the hazards of asbestos. Two weeks before trial, Aerojet provided the plaintiffs with the deposition testimony of a Mr. Leins, taken in connection with California asbestos litigation. Mr. Leins was deposed in February of 2001, seven months prior to the initiation of this present action. Aerojet's lead trial counsel, who answered Aerojet's responses to the plaintiffs' interrogatories in this case, was present at Mr. Leins's deposition. Mr. Leins was employed by Aerojet from 1957 until 1985, becoming the safety and health manager for the company in 1970. Mr. Leins's testimony unequivocally showed that Aerojet had used asbestos, and knew something of the hazards of asbestos as early as 1957.

The plaintiffs moved for sanctions on grounds that Aerojet had deliberately provided false and misleading interrogatory answers and had refused to comply with discovery. In support of their motion, the plaintiffs provided the court with Mr. Leins's deposition, sales records that showed Aerojet had bought raw asbestos in the early 1960s, as well as an independently located Aerojet patent for a rocket motor that had several asbestos-containing components. The court granted the plaintiffs' motion, in part, finding that Aerojet had not complied with Rule 56, the general provisions governing discovery, in its answers to the plaintiffs' interrogatory. As a sanction, the court ruled that Aerojet was not permitted to contend at trial that they did not use asbestos in its manufacturing processes or that it was not aware of the hazards of asbestos to the extent such

hazards were known prior to the last date of decedent's exposure to Aerojet materials.

The court revisited the plaintiffs' motion at the close of the plaintiffs' evidence. At this time, it heard the testimony of a Mr. Shell, who was employed by Aerojet from 1961 to 1998. The majority of Mr. Shell's tenure with Aerojet was spent working on the Minuteman missile program. Mr. Shell was employed as a structural test engineer, and for approximately fifteen years held a first-line engineering managerial position. Mr. Shell testified that asbestos was used in Aerojet's Minuteman missiles. The court found Mr. Shell to be a very credible witness. Following this hearing, the court instructed the jury that it was established as a fact that the decedent was exposed to Aerojet asbestos through the work clothes of her father during the period of 1959–1964. And further, the court instructed the jury that it was a fact that Aerojet was aware of the hazards of asbestos that were known in the industry prior to 1964.

■ Aerojet first alleges that the court's decision to instruct the jury on two ultimate facts was wrong as a matter of law. Aerojet argues that each ultimate fact necessary to sustain the verdict must be found by the jury, not the judge, and that the court was without authority for its action, because Rule 61.01(b) does not authorize the court to take fact issues away from the jury as a sanction for discovery violations. We disagree.

Rule 61.01(b) grants the trial court broad authority to sanction a party for failing to answer interrogatories or for providing incomplete or evasive answers to interrogatories. *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 648 (Mo. banc 1997). The rule authorizes the trial court to "make such orders in regard to the failure as are

just." Rule 61.01(b). "These sanctions include, but are not limited to, striking pleadings, dismissing the action, or by rendering a judgment by default against the disobedient party." *Id.* If a trial court enters a default judgment against a disobedient party, it has, in essence, removed all factual issues relative to liability from the jury. Certainly then, a court may enter a lesser sanction, the removal of specified factual issues from the jury's consideration. As a matter of logical deduction, if a court has been granted certain authority, it must possess all component powers of such authority. We hold that the trial court had the power under Rule 61.01 to direct factual findings as a sanction for discovery violations.

Aerojet alleges that even if the court had the power to remove questions of ultimate fact from the jury as a sanction, doing so in this case was an extreme and unwarranted sanction, and an abuse of the court's discretion. We disagree.

■ The trial court has broad discretion to control discovery. *Id.* at 647. This discretion extends to the trial court's choice of remedies in response to the non-disclosure of evidence during discovery. *Id.* We will not disturb the court's ruling absent a clear abuse of that discretion. *Fairbanks v. Weitzman,* 13 S.W.3d 313, 327 (Mo.App. E.D.2000).

We discern no abuse of discretion in the trial court's imposition of sanctions in this case. The court found that Aerojet intentionally withheld discoverable information from the plaintiffs concerning Aerojet's use of asbestos in its missiles. Aerojet falsely responded to an interrogatory seeking information on that point. Even Aerojet's trial counsel admitted at trial that the answers were "incorrect." The trial court further found that Aerojet's blanket refusal to acknowledge that it had used asbestos had skewed the discovery process from

the outset and prevented any meaningful discovery concerning Aerojet's knowledge of the hazards of asbestos.

■ The purposes of discovery are to eliminate concealment and surprise, to aid litigants in determining facts prior to trial, and to provide litigants with access to proper information with which to develop their respective contentions and to present their respective sides on issues framed by the pleadings. *Fairbanks,* 13 S.W.3d at 327 *citing J.B.C. v. S.H.C.,* 719 S.W.2d 866, 869 (Mo.App. E.D.1986). Discovery is a search for facts, in testimony and documents or other things, within the exclusive knowledge or possession of one party to another in anticipation of litigating a pending action in court. *J.B.C.,* 719 S.W.2d at 869 *citing* 27 C.J.S. Discovery § 20. The rules of civil discovery are intended to allow the parties to obtain information relevant to their dispute as quickly and inexpensively as possible. *State ex rel. Castillo v. Clark,* 881 S.W.2d 627, 630 (Mo. banc1994). Discovery is not intended to be a battleground where victory is awarded to the most clever and combative adversary. *Id.*

Rule 61.01 authorizes a court to sanction a party for failing to answer interrogatories or for providing incomplete or evasive answers to interrogatories. Aerojet did more than failing to answer, or providing incomplete or evasive answers to the plaintiffs' interrogatories—it gave false answers. Such conduct is reprehensible. The trial court could have struck Aerojet's pleadings or entered a default judgment, as the plaintiffs requested. The court did not do this, but rather, it imposed a sanction that addressed the precise effects of Aerojet's false answers the deprivation of plaintiffs' opportunity to identify those missile parts in which asbestos was actually used and that the decedent's father possibly machined, and Aerojet's knowl-

edge of the hazards of asbestos. The trial court was well within its authority and did not abuse its discretion in imposing the sanctions that it did. Point denied.

*Exclusion of Expert Testimony*

■ In another pretrial order, the trial court excluded Aerojet's expert witness, Dr. Victor Roggli. Aerojet claims Dr. Roggli would have testified as to his opinion on causation, specifically, that any alleged secondary exposure the decedent may have had to Aerojet's asbestos could not have caused her illness and death. As stated in its post-trial memorandum, the court excluded Dr. Roggli for Aerojet's "failure to comply with the court's standing order." The parties on appeal present this as the court's standard pretrial orders governing its asbestos docket. The plaintiffs represent that this order required Aerojet to state which experts they expected to offer "product-specific" causation testimony.[3]

By the record before us, Aerojet did not disclose Dr. Roggli until the eve of trial.[4] Aerojet offers no explanation for its failure to timely disclose Dr. Roggli. Rather, Aerojet argues that the plaintiffs had ample notice of both the fact and substance of Dr. Roggli's testimony because several other defendants had listed Dr. Roggli on their witness lists, the plaintiffs themselves identified Dr. Roggli as a potential witness on their master list of expert witnesses, and because Dr. Roggli was made available to plaintiffs for deposition and deposed before trial. Thus, Aerojet argues, since Dr. Roggli's testimony was not a surprise to the plaintiffs, the court erred in excluding his testimony.

■ We review the trial court's exclusion of testimony for an abuse of discretion. *See Grab ex rel. Grab v. Dillon*, 103 S.W.3d 228, 238 (Mo.App. E.D.2003); *Fairbanks*, 13 S.W.3d at 326–7; *Wilkerson*, 943 S.W.2d at 647–8. Courts are afforded broad discretion to exclude expert witnesses who are not timely disclosed. *Wilkerson*, 943 S.W.2d at 648; *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 386 (Mo.App. W.D. 1999). In this case, Aerojet did not disclose Dr. Roggli as one of its experts until several days before trial in a case that had been pending for over a year. By its late disclosure, Aerojet violated the trial court's order, again abused the discovery process, and, in effect, sandbagged the plaintiffs. That Dr. Roggli may have been disclosed by other defendants, or listed as a potential witness on the plaintiffs' master list of experts, is of no moment. Other parties may have called Dr. Roggli to testify as to any number of other matters besides whether the decedent's exposure to Aero-

**3.** A copy of the court's order is not included in the record on appeal. The plaintiffs also claim that they sent discovery requests to Aerojet, asking them to identify its experts who might testify at trial. The plaintiffs also represent that Aerojet provided a list in February of 2002, but that Aerojet did not include Dr. Roggli on this list. These records are also not in the record on appeal. A docket entry from February 13, 2002 states only "disclosure of expert witness filed." It is the appellant's responsibility to prepare the record on appeal. Rule 81.12; *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 649 (Mo.1997). Matters omitted from the record will not be presumed

to be favorable to the appellant. *Wilkerson*, 943 S.W.2d at 649.

**4.** The first mention of Dr. Roggli in the records before us is a court order of October 25, 2002, excluding his testimony. Aerojet, having tendered Dr. Roggli for deposition on that date, proceeded with the deposition, despite the court order excluding his testimony. And, despite the court order, Aerojet, pursuant to the court's pretrial order, disclosed Dr. Roggli as one of three experts who may be called at trial. Aerojet filed this disclosure with the court on November 1, 2002, just three days prior to the start of trial.

jet's asbestos caused her illness and death. Aerojet had a responsibility to timely disclose the experts it intended to call at trial. Aerojet failed to do so. The trial court properly sustained the plaintiffs' motion to strike Dr. Roggli's testimony on the basis that he was not timely disclosed. Aerojet's point is denied.

### Choice of Law

We next address the issue of choice of law. In a pretrial ruling, the trial court held that California law would govern the issue of Aerojet's liability, that Wisconsin law would govern the issue of AGCO's liability, and that Missouri law would govern the issue of damages. Aerojet alleges that the trial court erred in applying Missouri law rather than California law to damages. Aerojet argues that the trial court was obligated to apply the same law on damages as that for liability, and moreover, California has the most significant relationship to the issues in the case. Aerojet, understandably, argues for California damages law because, as Aerojet contends, California law disallows pain and suffering damages in wrongful-death actions, and because under California law, co-defendants are only severally liable for non-economic damages. Again, in this case, the jury awarded $3,000,000 for actual emotional and economic damages for the wrongful death of the decedent, $2,000,000 for the decedent's pre-death pain, suffering and emotional distress, and $119,000 for lost wages and medical expenses.[5]

When determining choice-of-law issues in a tort action, Missouri courts apply the "most significant relationship" test set out in Section 145 of the Restatement, Second, on Conflict of Laws.[6] *Ken-*

---

5. Section 377.34 of the California Code of Civil Procedure expressly prohibits damages for pain and suffering. That section states, in pertinent part, "In an action or proceeding by a decedent's personal representative or successor in interest . . . the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death . . . and do not include damages for pain, suffering or disfigurement." Such damages, however, do not appear to be expressly prohibited under California's wrongful-death statute, Section 377.60 *et seq.* Section 377.61, which governs damages in wrongful-death actions, authorizes recovery of damages that "under all the circumstances of the case, may be just, but may not include damages recoverable under Section 377.34." Since damages for pre-death pain and suffering are expressly prohibited under section 377.34, they appear to be recoverable according to the plain language of California's wrongful-death statute. *See In re Air Crash Disaster at Sioux City Iowa,* 760 F.Supp. 1283 (N.D.Ill.E.D.1991). Thus, it may be that damages for pain and suffering are recoverable under both Missouri and California law. Aerojet, however, also asserts that Missouri and California damage law is in conflict because under California law, co-defendants are jointly and severally liable for economic damages, but are only severally liable for non-economic damages, while under Missouri law, defendants are jointly and severally liable for all damages. Thus, Aerojet asserts, under California law, the jury should have decided each defendant's individual percentage of fault to determine each defendants' share of the liability for the non-economic damages awarded in this case. We have not been directed to any authority, nor have we found any, to suggest that the law is not in conflict on this aspect of damages.

6. Restatement, Second, Conflict of Laws Section 145 states:

   (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
   (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
   (a) the place where the injury occurred,
   (b) the place where the conduct causing the injury occurred,
   (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

*nedy v. Dixon,* 439 S.W.2d 173, 184 (Mo. banc 1969). Neither party asserts that the court erred in its determination that California law applied to the issue of Aerojet's liability under this test. Rather, Aerojet argues that, having determined that California law governed liability, the trial court was obliged to apply that same law to damages. In support of its contention, Aerojet relies on sections 171 and 178 of the Restatement, Second, on Conflict of Laws. Section 171 states that the law selected by the application of section 145 determines the measure of damages.[7] Section 178 similarly states that the same principle for wrongful-death actions.[8] Aerojet contends that these Restatement sections unequivocally confirm that the same law must be applied to liability and damages.

■ Contrary to Aerojet's contention, the Restatement approach to choice of law does not require that all issues in a particular case be controlled by the law of the same state. *See Glasscock v. Miller,* 720 S.W.2d 771 (Mo.App. S.D.1986). Under the conflict-of-laws doctrine of *depecage,* different issues in a single case may be decided according to the laws of different states. This process is perfectly permissible and, according to leading commentators, quite appropriate. *See Glasscock,* 720 S.W.2d at 774; *Ewing v. St. Louis–Clayton Orthopedic Group,* 790 F.2d 682 (8th Cir.1986), *citing* R. Leflar, *American*

*Conflicts Law* § 109 (3d ed.1977); R. Leflar, et al, *Cases and Materials on American Conflicts Law* at 283 (1982); and W. Reese, *Depecage: A Common Phenomenon in Choice of Law,* 73 Colum.L.Rev. 58 (1973). Indeed, the Restatement itself contemplates that different states' laws may be applied to different issues in the same case. Section 145(1) provides that "the rights and liabilities of the parties with respect to *an issue* in tort are determined by the local law of the state which, with respect to *that issue,* has the most significant relationship." (Emphases supplied). Continuing, section 145(2) provides that the "contacts are to be evaluated according to their relative importance with respect to *the particular issue.*" (Emphasis supplied). And, as set forth in the comments to section 171, "the state of conduct and injury will not, ..., be the state that is primarily concerned with the measure of damages in a tort action." Accordingly, we find that the trial court may separately analyze the issues of liability and damages in a case, and may properly apply different states' laws to each issue.

The question remains, then, whether the trial court, in analyzing the issue of damages in this case, properly determined that Missouri law should govern. Aerojet contends that, even under a separate analysis on the issue of damages, California law would still govern, as California was the place of exposure, decedent was a Califor-

---

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

7. Restatement, Second, Conflict of Laws Section 171 states: "The law selected by application of the rule of § 145 determines the measure of damages."

8. Restatement, Second, Conflict of Laws Section 178 states: "The law selected by application of the rule of § 175 determines the mea-

sure of damages in an action for wrongful death."

Section 175 states: In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

nia resident at the time of exposure, Aerojet is headquartered in California, and all contacts between the decedent and Aerojet were in California. Thus, Aerojet argues, California law applies because California has the more significant relationship to the occurrence and the parties. We disagree.

In undertaking a choice-of-law analysis, section 145 identifies four potentially significant contacts that a court may weigh in a tort case in determining which state has the "most significant relationship." These contacts include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Restatement, Second, Conflict of Laws Section 145(2). Certainly, Aerojet's conduct, place of business, and the relationship between Aerojet and the decedent were all in California. However, this is not dispositive. These contacts are to be evaluated according to their relative importance with respect to the particular issue at hand. *Id.* And, these contacts are not the sole factors for a court to consider. Rather, these contacts are to be taken into account in applying the principles of section 6 to determine the law applicable to an issue. *Id.; D.L.C. v. Walsh,* 908 S.W.2d 791 (Mo.App. W.D.1995). Section 6 of the Restatement provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The basic principles governing choice of laws are those enumerated in section 6. *D.L.C.,* 908 S.W.2d at 795. Thus, in weighing and interpreting the factors set out in Section 145, we must be guided by the principles set out in Section 6. *See Dillard v. Shaughnessy, Fickel and Scott Architects, Inc.,* 943 S.W.2d 711 (Mo. App. W.D.1997). Furthermore, Missouri courts do not apply these factors by "simply counting how many factors favor a particular state." *See Id.* at 715. Instead, courts evaluate the contacts based on their relative importance to the particular issue. *See Id.* "Different factors may be entitled to more weight in regard to one issue than in regard to another." *Id.*

In applying Missouri law to damages, the trial court reasoned that the injury ultimately suffered was decedent's death in Missouri, and that Missouri had the most significant contact with the decedent's death. Additionally, the court reasoned that all the surviving plaintiffs were residents of Missouri; that the public policy of Missouri, as reflected in the statutes, is to provide for certain damages in a wrongful-death case; and that Missouri had the predominant interest in the issue of damages for a wrongful death occurring within its boundaries. We find no fault in the trial court's reasoning.

The decedent's mesothelioma manifested in May of 2001, after she had moved to Missouri. She was diagnosed and treated

in Missouri. She suffered her pain and suffering in Missouri, and ultimately died in Missouri. Missouri has an interest in "compensating Missouri residents in the courts of this state in the manner which this state's laws have declared." *See Hicks v. Graves Truck Lines, Inc.,* 707 S.W.2d 439, 442 (Mo.App. W.D.1986). As reflected in the laws of this state, Missouri's policy favors the recovery of certain damages in a wrongful-death action. These damages include those for the decedent's pain and suffering. Section 537.090; *See Coggins v. Laclede Gas Co.,* 37 S.W.3d 335, 343 (Mo.App. E.D.2000). California, on the other hand, by one statute, has expressed its policy to limit the damages that may be recovered. Yet, we discern no overwhelming interest in California having its laws regarding compensation applied to the claims of non-resident plaintiffs.

Moreover, one of the principles set out in section 6 is the ease in the determination and application of the law. The trial court in this case, in determining what law would govern damages in this action, was confronted with a decedent and plaintiffs who were residents of Missouri and defendants who were from two different states, California and Wisconsin.[9] Aerojet failed to brief Wisconsin damages law, and admitted at oral argument that it had not researched the issue. Given that the jury might have found both a California defendant and a Wisconsin defendant liable, Aerojet fails to explain how damages would be allocated with possibly different components of damages from different states. Given the difficult situation facing the trial court, and guided by the principles set out in the Restatement, we find the trial court

properly applied Missouri law to the issue of damages in this case. Point denied.

*Remittitur*

We now turn our attention to the issue of remittitur, as our holding regarding choice of law impacts on Aerojet's allegation of error regarding the trial court's denial of remittitur in this case. Aerojet alleges the trial court erred in denying Aerojet's motion for remittitur and/or set-off. Aerojet's argument is largely premised on its assertion that California law should have been applied to damages. Aerojet argues that, under California law, the verdict should have been reduced by two million dollars, the amount awarded for pain and suffering, and that after a set-off, the net award would be zero. However, as previously discussed, the trial court correctly applied Missouri law to damages.

▪ Aerojet also argues, in conclusory fashion, that the amount of the verdict vastly exceeded any amount that was fair and reasonable under the circumstances of the case. Generally, the issue of damages is primarily for the jury to decide. *Emery v. Wal–Mart Stores, Inc.,* 976 S.W.2d 439, 448 (Mo. banc 1998). Moreover, the jury has extraordinarily wide discretion in determining the amount of recovery in wrongful-death cases. *Redfield v. Beverly Health and Rehabilitation Services, Inc.,* 42 S.W.3d 703, 712 (Mo.App. E.D.2001); *see also, Letz,* 975 S.W.2d at 174 *citing Cannada v. Moore,* 578 S.W.2d 597, 604 (Mo. banc 1979). The trial court may order remittitur if "after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." Sec-

9. At the time the trial court made its initial determination as to choice-of-law there were actually three defendants—Aerojet, AGCO, and General Gasket, a Missouri corporation. General Gasket was dismissed during the trial. At the time when the jury was instructed and the case was submitted to the jury, only Aerojet and AGCO remained as defendants.

tion 537.068 RSMo. (2000). The trial court is given broad discretion in deciding whether remittitur should be ordered. *Emery,* 976 S.W.2d at 448. We shall not disturb the court's decision absent an abuse of that discretion "so grossly excessive that it shocks the conscience and convinces this court that both the trial judge and the jury have abused their discretion." *Redfield,* 42 S.W.3d at 712; *see also, Lester,* 850 S.W.2d at 871. There was no abuse of discretion here. The conscience of this Court is undisturbed. Point denied.

*Jury Instructions*

We now turn our attention to Aerojet's remaining points on appeal those concerning alleged instructional error and cumulative error. Aerojet alleges numerous errors regarding the three verdict-directing instructions premised on strict liability—defective design, strict liability—failure to warn, and negligent failure to warn. We do not reach the merits of this point because Aerojet failed to preserve its allegations of error for review.

▮▮▮ Aerojet alleges the verdict-directing instructions premised on strict liability—defective design is flawed in some five different ways. Aerojet, however, made no trial objection to this instruction. Accordingly, this objection is not preserved for review. To preserve claims of instructional error for review, counsel is required to make specific objections to the instruction at trial and again raise the error in the motion for new trial. *See* Rule 70.03; *Seidel v. Gordon A. Gundaker Real Estate Co., Inc.,* 904 S.W.2d 357, 364 (Mo.App. E.D.1995).

▮▮ As to the verdict-directing instruction for strict liability—failure to warn, Aerojet alleges this instruction is also variously flawed. Aerojet argues that the instruction is confusing, argumentative, misleading, fails to require a finding that the alleged product defect or that Aerojet's failure to warn was a substantial factor in causing the decedent's injury and death, improperly joins product defect and failure to warn into one instruction, and constitutes a roving commission. Aerojet also alleges the instruction is flawed because it improperly instructs the jury as to an ultimate fact and improperly invites an award of pain and suffering damages, which California law does not permit in wrongful-death cases. None of these objections to this instruction were raised at trial. Aerojet's only objection at trial was that there was not enough scientific and medical evidence in the record for the case to go forward on the theory of failure to warn. Where an alleged error relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal. *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 823 (Mo. banc 2000); *see also, Seidel,* 904 S.W.2d at 364. Accordingly, because Aerojet's allegations of error on appeal relating to this instruction differ from the objections made to the trial court, Aerojet's allegations of error are not preserved for appeal, and may not be reviewed.

Aerojet's allegations of error regarding the verdict-directing instruction for negligent failure to warn meet the same fate. On appeal, Aerojet alleges this instruction is flawed because it is confusing and misleading, fails to require a finding that any negligence by Aerojet was a substantial factor in causing injury and death to the decedent, and is redundant, as two other verdict-directing instructions also instructed the jury on the issue of failure to warn. These alleged errors differ from the objection made to the trial court, where Aerojet's sole objection was that an instruction on failure to warn was inappropriate because "the evidence submitted throughout the trial was that with regard to take-

home exposure, that evidence didn't really come to light until almost the 1970's." Again, because Aerojet's allegations of error on appeal relating to this instruction differ from the objections made to the trial court, Aerojet's allegations of error are not preserved for appeal, and may not be reviewed. *See Giddens,* 29 S.W.3d at 823. If the instructions now complained of were as seriously flawed as Aerojet now contends, they should have made its complaints known to the trial court. Point denied.

*Cumulative Error*

Lastly, Aerojet alleges that the cumulative effect of the trial court's multiple errors warrants reversal and remand for a new trial. Given our holding that the trial court did not err, we have no basis to find cumulative error. Point denied.

The judgment is affirmed.

CLIFFORD H. AHRENS, P.J., and WILLIAM H. CRANDALL, JR., J., concur.